NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ERIC J. HANDELMAN,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF NEW JERSEY, NEW JERSEY DEPARTMENT OF TRANSPORTATION, JOHANNA BARBA JONES, and JOHN DOES 1-4, fictitious persons,<br><br>Defendants. | Civil Action No.:<br>16-2325 (JLL)(JAD)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendants' Partial Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) (Defendants, State of New Jersey, New Jersey Department of Transportation, Johanna Barba Jones, and John Does 1-4) ("Defendants"). (ECF No. 3-1.) The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants in part the Partial Motion to Dismiss.

## FACTUAL BACKGROUND[1]

Plaintiff Eric J. Handelman ("Plaintiff") is a Jewish-American Male. (ECF No. 6-1 ("Compl.") ¶ 7.)[2] In 2002, he began working with the State of New Jersey and the New Jersey Department of Transportation (hereinafter "NJDOT"). (*Id.* ¶ 8.) During his work in the Office of the Inspector General ("OIG"), under the three Inspectors General who served before Johanna Barba Jones ("Defendant Jones"), Plaintiff had always received excellent performance reviews. (*Id.* ¶ 9.) From September 2002 until June 2005, Plaintiff served as a Regulatory Officer. (*Id.* ¶ 10.) In June 2005, he was promoted to Executive Assistant I for "excellent service" and a reclassification of duties performed. (*Id.* ¶ 11.) In June 2011, the Inspector General, with the approval of the NJDOT Commissioner and Deputy Commissioner, gave Plaintiff the functional titles of NJDOT Custodian of Records and NJDOT Ethics Liaison Officer. (*Id.* ¶ 12.)

### A. Plaintiff's Work Under Defendant Jones

In July 2012, Defendant Jones was appointed as Inspector General of the NJDOT, becoming Plaintiff's direct supervisor. (*Id.* ¶ 13.) Less than one month later, in August, Defendant Jones removed Plaintiff from what was then his office, replacing him with another employee. (*Id.* ¶ 14.)

In December 2012, without any complaints of poor work, and without being given an "appropriate" reason, Defendant Jones removed Plaintiff as Custodian of Records. (*Id.* ¶ 15.) Plaintiff's less qualified direct report replaced him. (*Id.*) In December 2012, Defendant Jones encouraged pervasive Christmas decorations in the wing of Plaintiff's office. (*Id.* ¶ 16.) Encouraged decorations included Christmas symbols and ornaments, and a crèche on Plaintiff's

---

[1] This background is derived from Plaintiff's Complaint, which the Court must accept as true at this stage of the proceedings. *See Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007).

[2] The complaint submitted with the removal order (ECF No. 1-1) was incomplete. Instead, the Court relies on the complete version submitted as Exhibit A to Jenifer L. Casazza, Esq.'s Certification in Opposition to Partial Motion to Dismiss. (ECF No. 6-1.)

door, despite Defendant Jones' knowledge that Plaintiff is Jewish. (*Id.*) Upon Plaintiff's arrival to work that day, Defendant Jones asked him if the crèche offended him, telling him that if it did, she would remove it. (*Id.* ¶ 17.) The next day, when Plaintiff arrived to work, he noticed that a "Chanukah bear" holding a gold coin had been placed on a shelf diagonally opposite to his office. (*Id.* ¶ 18.) Additionally, in Spring 2013, during a one-on-one meeting between Plaintiff and Defendant Jones to discuss the progress of his assignments, Defendant Jones advised Plaintiff of her sympathies for the "Arab Spring" and the Palestinian movements. (*Id.* ¶ 20.)

Plaintiff was responsible for administering Ethics compliance for about 3,000 employees. (*Id.* ¶ 21.) He had staff to assist him with these responsibilities. (*Id.*) In May 2013, Defendant Jones removed Plaintiff's assistant, without reason, from all Ethics duties, leaving Plaintiff to perform every administrative, secretarial, and substantive task by himself. (*Id.* ¶ 22.) During this time, Defendant Jones also increased Plaintiff's assignment volume, giving him many "special projects." (*Id.* ¶ 23.) These actions were allegedly taken to create an impossible challenge and set Plaintiff up for failure. (*Id.* ¶¶ 22-23.)

Under the Department's grading system, a "3" is given to employees who exceed expectations, a "2" is given to employees who meet expectations, and a "1" is given to employees who fail to meet expectations. (*Id.* ¶¶ 24-25.) During a May 2013 performance appraisal, Defendant Jones told Plaintiff that she felt compelled to give him all "2's" instead of "1's" because of the severe deficiencies that needed to be shown for an employee to merit a "1." (*Id.* ¶ 24.) She told Plaintiff that she wished the system permitted her to give him a "1.5." (*Id.*) Defendant Jones further added that if a "3" were reserved for Jesus Christ, and a "2" were reserved for St. Peter, then a "1" would be reserved for Satan. (*Id.* ¶ 25.) Because this last part of the exchange was unrelated to the actual review, Plaintiff took it as an insult. (*Id.* ¶ 26.)

3

In August 2013, Defendant Jones demanded that Plaintiff change his hours from 8:00 AM – 3:30 PM to 9:00 AM – 5:00 PM, knowing that this would interfere with his childcare responsibilities. (*Id.* ¶ 27.) Upon Plaintiff's information and belief, no other employee's hours were changed. (*Id.* ¶ 28.) Plaintiff immediately went to NJDOT Human Resources Director Jeanne Victor, and inquired whether he had the right to maintain his work hours. (*Id.* ¶ 29.) During this conversation, he also expressed his concerns regarding the religious discrimination and the hostile work environment he had been subject to as a result of Defendant Jones' actions. (*Id.*) Plaintiff further requested a transfer to another section of the NJDOT. (*Id.* ¶ 30.) However, despite Plaintiff's claims about Defendant Jones, there were never any investigations, remedial or disciplinary actions taken against her. (*Id.* ¶ 31.)

**B. Plaintiff's Transfer**

With the approval of the deputy commissioner of the NJDOT, on or about October 5, 2013, Ms. Victor was able to secure Plaintiff's transfer to the Division of Right of Way, Capital Program Management. (*Id.* ¶ 32.) Before Plaintiff's transfer, Defendant Jones informed him that his work for her under the OIG was "portable." (*Id.* ¶ 33.) She asked Plaintiff to show her where he would be working after the transfer, so that she "would know where to find him." (*Id.* ¶ 34.) Defendant Jones also obtained an understanding with Plaintiff's new supervisor that Plaintiff could still be called to work on OIG matters and assignments. (*Id.* ¶ 35.)

For at least six months after his transfer, Plaintiff had no issues or complaints in his new role. (*Id.* ¶ 36.) Defendant Jones never contacted him regarding errors, deficiencies or incomplete work. (*Id.*)

### C.  Disciplinary Proceedings

On or about March 14, 2014, Human Resources Director Michele Shapiro ("Ms. Shapiro") signed and served Plaintiff with a Notice of Preliminary Discipline ("NPD"). (*Id.* ¶ 37.) This notice was initiated by Defendant Jones and served in retaliation for Plaintiff's discrimination complaints. (*Id.* ¶ 38.) Defendant Jones imposed the NPD for incomplete work that she allegedly discovered two days after Plaintiff's October 5th transfer. (*Id.* ¶ 39.) The charges she raised were titled "Insubordination" and "Neglect of Duty." (*Id.*) Defendant Jones singlehandedly charged, investigated and prosecuted the Plaintiff under the NPD, acting as the prosecutor, investigator, jury and judge. (*Id.* ¶ 40.)

Even though Defendant Jones oversees investigations in her role as Inspector General, she is required to remove herself and assign the investigation to an independent party when a discrimination complaint is asserted against her, so as not to give the appearance of impropriety. (*Id.* ¶ 41.) She failed to do this. (*Id.*) In charging Plaintiff, Defendant Jones and the NJDOT failed to:  (a) begin a mandatory investigation of the allegations before filing charges and imposing discipline; (b) allow Plaintiff to be heard before the charges were filed and discipline was imposed; (c) comply with policy; (d) impose progressive discipline; (e) consider mitigating factors; (f) investigate the allegations in a timely manner; (g) administer the NPD in a consistent manner; (h) obtain management's explicit approval before issuing the NPD; (i) inform Plaintiff of specific allegations; (j) produce relevant documents to Plaintiff; and (k) remove Defendant Jones from the proceedings despite the impropriety of her involvement. (*Id.* ¶ 42.)

Defendant Jones was the highest policy making authority in commencing the mandatory investigation of her own allegations against Plaintiff. (*Id.* ¶ 43.) Defendant Jones intentionally violated Department Policy when she failed to commence a mandatory investigation of her

allegations against Plaintiff. (*Id.* ¶ 44.) She performed an incomplete and intentionally misleading unofficial investigation in which she fabricated facts, destroyed, lost or failed to preserve necessary documents and information, created new prejudicial documents and misled the hearing officer on an internal appeal after discipline had been imposed. (*Id.* ¶ 45.) Despite Defendant Jones' duties being separate from those of the "prosecution" arm of the department, she still improperly required and/or influenced Ms. Shapiro to sign off on the NPD. (*Id.* ¶ 46.) Defendant Jones and Ms. Shapiro acted in concert in imposing discipline upon Plaintiff. (*Id.* ¶ 47.)

On or about March 18, 2014, Plaintiff sent a letter to Ms. Shapiro and to Employee Relations Manager Edel McQuaid ("Ms. McQuaid"), reasserting his claims that Defendant Jones retaliated and discriminated against him. (*Id.* ¶48.) In response, Ms. McQuaid denied Plaintiff over 1200 documents that were relied upon to "charge" Plaintiff and that contained pertinent, and potentially exculpatory evidence. (*Id.* ¶ 49.) Also in response to Plaintiff's letter, the NJDOT Division of Civil Rights began an investigation into how Defendant Jones had been acting towards Plaintiff. (*Id.* ¶50.) On or about May 27, 2014, the NJDOT provided Plaintiff with a list of employee names that allegedly correlated with incomplete work forms. (*Id.* ¶ 51.) However, they neither provided Plaintiff with the forms themselves nor with proof of his allegedly incomplete work. (*Id.*) On or about June 29, 2014, Plaintiff sent a written response requesting that the charges against him be dismissed. (*Id.* ¶ 52.) This letter specifically stated that Plaintiff could not comment on incomplete work forms unless he was provided with such forms for review. (*Id.*) Plaintiff was not provided with these forms. (*Id.*)

In May 2014, Plaintiff filed a Title VII charge with the EEOC alleging religious discrimination and retaliation. (*Id.* ¶ 53.) In June 2014, the NJDOT Division of Civil Rights held that Defendant Jones had violated the State's discrimination policy as applicable to all State

employees. (*Id.* ¶ 54.)  However, in August or September 2014, Defendant Jones continued her alleged retaliation against Plaintiff by filing an Ethics violation with the New Jersey State Ethics Commission. (*Id.* ¶ 55.)  This matter, which she raised in August 2013, pertained to Plaintiff's outside activity as a legal writer. (*Id.*)   No ethics violations were found, and Plaintiff was exonerated. (*Id.*)

On or about November 30, 2014, the NJDOT formally denied Plaintiff access to the 1200 forms he requested because producing them would cause an "undue burden." (*Id.* ¶ 56.)  These were the same forms that the NJDOT asserted in its case against Plaintiff. (*Id.*)  The NJDOT's denial of forms was issued five months after Plaintiff's discovery request and two weeks before the department hearing. (*Id.*)  This hearing occurred on December 17, 2014, but the Department never produced the 1200 forms as evidence. (*Id.* ¶ 57.)  During the hearing, Plaintiff requested that the discipline be reversed and the charges against him be dismissed. (*Id.* ¶ 58.)  The hearing officer, Steven Tallard ("Mr. Tallard"), said he believed that the 1200 forms existed, but he refused to order that the NJDOT turn them over to Plaintiff. (*Id.* ¶ 59.)  Mr. Tallard also refused to order that NJDOT produce these forms at the hearing. (*Id.*)  He merely sympathized with Plaintiff by agreeing that a mandatory investigation had not been conducted prior to the imposition of discipline upon Plaintiff. (*Id.* ¶ 60.)

## PROCEDURAL HISTORY

Plaintiff, asserting that Defendant Jones intentionally discriminated and retaliated against him based on his religion, filed a claim with the EEOC in May 2014. (*Id.* ¶ 53.)

Plaintiff then commenced this action in the Superior Court of New Jersey, Bergen County Law Division, on February 23, 2016 by filing a six-count complaint alleging:  (1) violation of the

NJLAD on Religion, N.J.S.A. § 10:5-1 *et seq.*;[3] (2) violation of the NJLAD on Retaliation, N.J.S.A. § 10:5-1 et seq.; (3) Aiding and Abetting per the NJLAD, N.J.S.A. § 10:5-1 et seq.; (4) violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-2; (5) civil rights violations pursuant to 42 U.S.C. § 1983 and U.S. Const. amends. I, XIV; and (6) violation of Plaintiff's civil rights under 42 U.S.C. § 1985(3). (*Id.* at 10-19.)

This action was removed to the Federal District Court for the District of New Jersey on April 25, 2016, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. (ECF No. 1.)  On May 10, 2016 Defendants filed a Partial Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* ECF No. 3-1 ("Mov. Br.").)  Defendants move to dismiss the first, fourth and sixth counts of Plaintiff's Complaint. (*Id.*)  Plaintiff filed opposition on June 6, 2016. (ECF No. 6 ("Opp. Br.").) Defendants replied on June 13, 2016.  (ECF No. 7 ("Reply Br.").)  The matter is now ripe for resolution.

## LEGAL STANDARD

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).)  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556.)  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit,

---

[3] Plaintiff characterizes this claim as "NJ LAD – Discrimination/Hostile Work Environment."  (*See* Opp. Br. at 13.)

the court must take three steps: first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citations omitted.)  "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010.)  The Court's role is not to determine whether the non-moving party "will ultimately prevail" but whether that party is "entitled to offer evidence to support the claims." *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 302 (3d Cir. 2011.)  The Court's analysis is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.

## ANALYSIS

### A. Plaintiff's Religious Discrimination / Hostile Work Environment Claim under the NJLAD (Count One) Must Be Dismissed as Time-Barred.

In Count One of the Complaint, Plaintiff alleges religious discrimination in violation of the NJLAD (Compl. ¶ 64), which he also characterizes as a "hostile work environment" claim (*see* Opp. Br. at 13).  For the reasons below, the Court grants Defendant's motion to dismiss Count One as time-barred.

9

1. Standard

The purpose of the NJLAD is to prevent employment discrimination against a person on the basis of their membership within any of the protected classes articulated therein. *Lehmann v. Toys R Us, Inc.*, 626 A.2d 445, 454 (N.J. 1993); *see also* N.J.S.A. §§ 10:5-1 – 10:5-49 (West 2016). The statute states in relevant part:

> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination [f]or an employer, because of the race, *creed*, color. . . to refuse to hire or employ or to bar or to discharge or require to retire . . . or to discriminate against such individual in compensation or in terms, conditions or privileges of employment . . . .

N.J.S.A. § 10:5-12(a) (West 2016) (emphasis added).

In order for an employee to establish a prima facie case of hostile work environment based on religious discrimination, the plaintiff must show that "(1) plaintiff belongs to a protected class; (2) she was performing her job at a level that met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) others not within the protected class did not suffer similar adverse employment actions." *El-Sioufi v. St. Peter's Univ. Hosp.*, 382 N.J. Super. 145, 167 (N.J. Super. Ct. App. Div. 2005) (citing *Maher v. New Jersey Transit R.O. Inc.*, 125 N.J. 455, 480-81 (N.J. 1991)). "[T]he inquiry is whether a reasonable person of plaintiff's religion or ancestry would consider the workplace acts and comments made to, or in the presence of, plaintiff to be sufficiently severe or pervasive to alter the conditions of employment and create a hostile working environment." *Cutler v. Dorn*, 196 N.J. 419, 430-31, 955 A.2d 917, 924 (2008) (citing *El-Sioufi*, 382 N.J. Super at 178).

2. Discussion

Defendant moves to dismiss Count One on grounds that it is time-barred by the NJLAD's two-year statute of limitations. (*See* Mov. Br. at 4-6; Reply Br. at 3-5.) In opposition, Plaintiff

10

argues that the "continuing violation" doctrine applies to Count One and that the claim is therefore timely.  (Opp. Br. at 9-13.)

     *a.   Continuing Violation Doctrine Explained*

Although the statute of limitations period for NJLAD claims is two years,[4] the "continuing violation" doctrine is an "equitable exception."  *See Shepherd v. Hunterdon Developmental Ctr.*, 174 N.J. 1, 6-7, 17-24 (2002) (citing primarily to *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).[5]

The continuing violation doctrine is premised on the nature of a hostile work environment claim, which "is composed of a series of separate acts that collectively constitute one 'unlawful employment practice'" and "cannot be said to occur on any particular day." *Morgan,* 536 U.S. at 115-17.  Indeed, in *Morgan*, the Supreme Court

> established a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a hostile work environment claim.  The former must be raised within the applicable limitations period or they will not support a lawsuit. . . . The latter can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.

*O'Connor*, 440 F.3d at 127 (citing *Morgan*, 536 U.S. at 105, 113).[6]  Stated differently, "[u]nder the continuing violation doctrine, discriminatory acts that are not individually actionable may be

---

[4] N.J.S.A. § 2A:14-2 (West 2016); *see also Montells v. Haynes*, 133 N.J. 282 (1993) (establishing that the two-year limitations period described under N.J.S.A § 2A:14-2 is applied to NJLAD claims rather than the six-year limitations period under N.J.S.A § 2A:14-1).

[5] As explained in *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2006), the distinction between "discrete acts" and "continuing violations" made in *Morgan* is "a generic feature of federal employment law."  Accordingly, although the majority of cases on the issue pertain to Title VII claims, the Court nevertheless finds the analysis instructive to Plaintiff's NJLAD claims.  *See Shepherd*, 174 N.J. at 20-21 (concluding that *Morgan*'s "formulation of the continuing violation doctrine" is applicable to NJLAD claims).

[6] As explained by the *Morgan* Court, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discriminatory act starts a new clock for filing charges alleging that act."  536 U.S. at 113.  In contrast, "consideration of the entire scope of a hostile work environment claim,

11

aggregated to make out a hostile work environment claim; such acts 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.'" *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165-66 (3d Cir. 2013) (quoting *O'Connor*, 440 F.3d at 127). "To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the *same unlawful employment practice* and that at least one act falls within the applicable limitations period." *Id.* at 165-66 (emphasis added) (citing *Morgan,* 536 U.S. at 122) (other citation omitted).

Separately, Third Circuit case law provides "that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (citations omitted). In other words, "[i]f the [statute of limitations] bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011) (alteration in original). Thus, a complaint will only be dismissed on statute of limitations grounds where the plaintiff affirmatively has "pleaded himself out of court." *Schmidt*, 770 F.3d at 251.

> b. *Plaintiff Has Affirmatively Pleaded That His Religious Discrimination Claim is Untimely and Has to Properly Invoke the Continuing Violation Doctrine*

The Court concludes that, in its current form, Plaintiff's complaint affirmatively demonstrates that his religious discrimination claim is untimely, and is not salvaged by the continuing violation doctrine. Although the Court concludes that Count One must be dismissed as time-barred, it will grant Plaintiff leave to amend.

---

including behavior alleged outside the statutory time period, is permissible for purposes of assessing liability, so long as any act contributing to that hostile environment takes place within the statutory time period." *Id.* at 105.

Plaintiff has affirmatively pleaded that there are no timely allegations relating to his religious discrimination / hostile work environment claim.  Here, as alleged by Plaintiff in Count One:

> Plaintiff's religious beliefs were a motivating factor in Defendants' decision to treat Plaintiff unlawfully by encouraging the pervasive decoration of the wing where Plaintiff's office was as well as Plaintiff's office door with Christmas decorations [December 2012], and asking Plaintiff if he was offended by a displayed crèche rather than simply removing the crèche [December 2012]. Additionally, Defendant Jones would repetitively make references to religion when they were completely unrelated to whatever business matter was being discussed between Jones and Plaintiff [Spring of 2013]. Plaintiff's religious beliefs were a motivating factor in Defendants' decision to remove Plaintiff from his office [August 2012], to remove function and supervisory responsibility as Department Custodian of Public Records [August 2012], to remove his Ethics assistant in his role as Ethics Liaison Office [May 2013], to assign him a wholly secretarial assignment [May 2013], and to demand a change in his work hours [August 2013].

(Compl. ¶ 62; *see also* Reply Br. at 4.) These allegations clearly occurred more than two years prior to the filing of the Complaint and are untimely. Thus, in the absence of a continuing violation, the Court must dismiss Count One of Plaintiff's complaint as time-barred.

Plaintiff acknowledges that the applicable statute of limitations cutoff in this action is February 23, 2014—two years prior to the date he filed his complaint—but attempts to invoke the continuing violation doctrine for Count One by reference to three acts that occurred after February 23, 2014. (*See* Opp. Br. at 12.) Specifically, Plaintiff argues that there are three timely allegations which are sufficient to invoke the continuing violations doctrine: (1) service of the Preliminary Notice of Discipline on March 14, 2014, which was allegedly filed by Jones for alleged incomplete work discovered two days after Plaintiff's transfer; (2) the ethics charge filed in August or September 2014 against Plaintiff by Jones; and (3) the Final Notice of Discipline that resulted in

13

five days of paid suspension in December 2014. (*Id.*) The Court concludes that these allegations are insufficient to invoke the continuing violations doctrine.

First, Plaintiff did not specifically plead the continuing violation doctrine in his complaint. It is unsettled in the Third Circuit whether a plaintiff must specifically plead the continuing violation doctrine. *Compare Poveromo-Spring v. Exxon Corp.*, 968 F. Supp. 219, 226 (D.N.J. 1997) ("To apply the continuing violation theory properly plaintiff must have pled this theory specifically.") *and Williams v. Home Depot, U.S.A., Inc.*, No. 98-3712, 1999 WL 788597, at *6 (E.D. Pa. Oct. 5, 1999) ("In order to invoke the continuing violations theory in an employment discrimination case, the doctrine must be clearly pled in both the administrative filing and the complaint."), *with Phillips v. Heydt*, 197 F. Supp. 2d 207, 217 (E.D. Pa. 2002) (noting that "other opinions indicate a willingness to look at the substance of the allegations, rather than specific language of the pleadings, to determine if a plaintiff has properly invoked the doctrine"). The rationale for requiring the continuing violation doctrine to be clearly plead is that "[w]ithout such an allegation, there is merely continuity of employment with what may be no more than sporadic instances of discriminatory conduct, and '[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination.'" *Williams*, 1999 WL 788597, at *6 (citing *Del. State Coll. v. Ricks*, 449 U.S. 250, 257 (1980)).

The Court finds the *Williams* rationale persuasive in light of Plaintiff's allegations. As noted, in paragraph 62 of the complaint, Plaintiff recites the relevant allegations in support of his hostile work environment claim. Absent from this paragraph are the three allegations that Plaintiff seeks to rely on for purposes of this motion and invocation of the continuing violation doctrine. Indeed, the only reference to "continuous" in Plaintiff's complaint is with respect to Plaintiff's retaliation claims. (Compl. ¶ 55 (noting that "Defendant Jones continued to retaliate against

14

[Plaintiff][.]").)  Plaintiff's complaint therefore fails to plead that the continuing violation doctrine applies to Count One.

Second, even if Plaintiff had specifically pleaded the continuing violation doctrine in connection with Count One, it is unclear whether the timely allegations cited by Plaintiff can be aggregated in applying the doctrine.  In short, it is unclear whether the continuing violation doctrine allows for aggregation of allegations pleaded as retaliatory to be considered in support of a hostile work environment claim.[7]  "To allege a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the *same unlawful employment practice* and that at least one act falls within the applicable limitations period."  *Mandel*, 706 F.3d at 165-66 (emphasis added) (citing *Morgan,* 536 U.S. at 122).  By Plaintiff's own account, after his transfer away from Jones, there was a period of at least six months where he "was working well in his new role, with no issues and no complaints" (*i.e.*, no allegations concerning a hostile work environment).  (Compl. ¶ 36.) It was only after Plaintiff reported the harassment of Jones to HR that the timely allegations occurred.  (*See id.* ¶¶ 67-71.)  Indeed, Plaintiff affirmatively alleges that the Preliminary Notice of Discipline (March 2014) was "*in retaliation* for his complaints of religious discrimination," while the ethics charge (August or September 2014) demonstrated that "Defendant Jones continued to *retaliate* against Mr. Handelman[.]" (Compl. ¶¶ 37, 55) (emphasis added).   With respect to the Final Notice of Discipline that allegedly resulted in five days of paid suspension (December 2014),

---

[7] Although "retaliation can take the form of a hostile work environment," *Hurley v. Atl. City Police Dep't*, No. 96-4928, 1998 U.S. Dist. LEXIS 12742, 24 (D.N.J. 1998), Plaintiff has not provided any precedent suggesting the opposite—that a hostile work environment can be shown through alleged acts of retaliation.  The Court declines to comment on this issue at this time, as doing so would be dicta, but notes that at least one New Jersey Appellate Court treated the claims as distinct.  *See El-Sioufi v. St. Peter's Univ. Hosp.*, 382 N.J. Super. 145 (N.J. Super. Ct. App. Div. 2005); *see also See Parker v. City of Trenton*, 382 N.J. Super. 454, 457 (N.J. Super. Ct. App. Div. 2006) (noting that evidence pertaining to dismissed claim of discrimination could was "relevant" to surviving claim of retaliation, because it could "explain the reasons for the alleged retaliation").

this allegation is absent from the complaint. "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Commwealth of Pa. ex. rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal quotation omitted). More to the point, Plaintiff himself characterizes the Final Notice of Discipline as a "tangible adverse employment action" (Opp. Br. at 12), suggesting that it is an individually actionable discrete act; it is thus unclear whether it may be properly aggregated as part of a continuing violation for Plaintiff's hostile work environment claim. *See Mandel*, 706 F.3d at 165-66 ("Under the continuing violation doctrine, discriminatory acts that are *not individually actionable* may be aggregated to make out a hostile work environment claim[.]") (emphasis added) (quoting *O'Connor*, 440 F.3d at 127). Accordingly, the Court finds that Count One, as pleaded, is time-barred.

   *c.   Dismissal Is Without Prejudice to Provide Plaintiff With Leave to Amend*

   In his opposition brief, Plaintiff specifically requests leave to amend. (Opp. Br. at 18-19.) Rule 15(a)(2) provides that leave to amend "should be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "Leave shall be freely given in the absence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies in previous amendments, undue prejudice or futility of the amendment." *In re Caterpillar Inc.*, 67 F. Supp. 3d 663, 668 (D.N.J. 2014) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)). However, "a court may deny leave to amend when such amendment would be futile"—*i.e.*, "the amended complaint would not survive a motion to dismiss for failure to state a claim." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014) (citations omitted). Furthermore, "[a] District Court has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve

them." *Krantz v. Prudential Investments Fund Mgmt.*, 305 F.3d 140, 144 (3d Cir. 2002) (citing *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 654 (3d Cir.1998)).

Here, as an initial matter, the Court cannot conclude that Plaintiff was "on notice" of the deficiencies and "chose not to resolve them," as the Court finds that Plaintiff had a good faith basis to attempt to invoke the continuing violation doctrine. And although the Court finds that Count One is time-barred, the Court believes that Plaintiff may be able to amend the allegations in a way to sufficiently invoke the continuing violations doctrine. As noted, this will require Plaintiff to demonstrate the propriety of considering allegations of retaliation in connection with a hostile work environment claim. At this time, the Court cannot definitively say that amendment would be futile. Accordingly, the Court shall dismiss Count One as time-barred, but dismissal shall be without prejudice to allow Plaintiff to amend in accordance with this Opinion.

### B. Plaintiff's Claim Under the New Jersey Civil Rights Act is Dismissed, Except to the Extent it Seeks Relief Against Jones in Her Individual Capacity

In Count Four of his Complaint, Plaintiff alleges violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-2 ("NJCRA"). The Court shall dismiss this claim to the extent it seeks relief against Defendants in their official capacity, but it shall proceed to the extent it seeks relief against Defendant Jones in her individual capacity.

1. Standard

In pertinent part, the NJCRA provides that

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and

17

> for injunctive or other appropriate relief. The penalty provided in
> subsection e. of this section shall be applicable to a violation of this
> subsection.

N.J.S.A. § 10:6-2.

The NJCRA is interpreted analogously to 42 U.S.C. § 1983. *See Pitman v. Ottehberg, Civil No. 10-2538*, 2013 WL 6909905, *8 (D.N.J. Dec. 31, 2013) (collecting cases). Accordingly, Plaintiff must plead facts demonstrating a § 1983 violation in order to state a viable NJCRA claim.

To establish a cause of action under § 1983, Plaintiff must demonstrate that: (1) there was a violation of a right secured by the Constitution and laws of the United States, and (2) the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).

2. <u>Discussion</u>

The dispositive issue is whether the Defendants can be considered "persons acting under color of state law" amenable to suit in light of Eleventh Amendment sovereign immunity.

Plaintiff concedes that the State of New Jersey and the New Jersey Department of Transportation are not "persons" within the meaning of § 1983 and likewise cannot be subject to suit under the NJCRA. "The Eleventh Amendment to the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court, regardless of the relief sought." *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009) (citing *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir.2001)). Accordingly, Count Four shall be dismissed to the extent it could be construed to seek relief against the State of New Jersey and the New Jersey Department of Transportation.

However, Plaintiff maintains that Defendant Jones is subject to liability in her individual capacity for damages, as well as in her official capacity for injunctive relief. (Opp. Br. at 13-16.)

18

Defendants contend that Jones is not subject to suit under the NJCRA in her official capacity. (Reply Br. at 5-6.) The Court concludes that, as drafted, the Complaint states a claim against Jones in her individual capacity, but fails to state a claim against Jones in her official capacity.

With respect to Jones acting in her individual capacity, "the Eleventh Amendment does not bar suits brought against state officials in their individual capacities, even if the actions which are the subject of the suit were part of their official duties[.]" *Slinger v. New Jersey*, 366 F. App'x 357, 360 (3d Cir. 2010) (citing *Hafer v. Melo*, 502 U.S. 21, 31 (1991)). The Court notes that Defendants do not assert otherwise. Accordingly, the Court finds that Plaintiff has stated an NJCRA claim against Jones in her individual capacity.

With respect to Jones acting in her official capacity, it is "clear that a state employee may be sued in his official capacity only for 'prospective' injunctive relief, because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011) (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)) (internal citation omitted). To determine whether a plaintiff has adequately stated a claim for prospective injunctive relief against a state employee acting in her official capacity, the Court must determine whether the complaint alleges an "ongoing violation" of the law and "seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (citation and internal quotation marks omitted). Here, Plaintiff merely cites to his request for "other equitable relief" in support of maintaining an official capacity suit against Jones. (Opp. Br. at 15-16.) However, even if this could be broadly construed to encompass prospective relief, Plaintiff has not alleged an ongoing violation of the law. Plaintiff confusingly states that "Defendants, acting under color of law, have subjected and causes to be subjected to the deprivation of Plaintiff's due process rights, privileges or immunities secured by the Constitution

19

or laws of this State." (Compl. ¶ 85.) Plaintiff's mere use of the word "causes" is insufficient to allege an ongoing violation, in light of the fact that all of the factual allegations are rooted in past action. Similarly, Plaintiff's conclusory statement regarding Jones' "*de facto* policy to discriminate" is likewise insufficient to demonstrate that Plaintiff is plausibly entitled to relief for an ongoing violation.

In sum, the Court grants the motion to dismiss Count Four, with the exception of permitting Count Four to proceed against Jones in her individual capacity. For the reasons stated in connection with Count One, such dismissal shall be without prejudice to provide Plaintiff with an opportunity to amend.

### C. The Conclusory Allegations Supporting Count Six are Insufficient to State a Claim.

In Count Six, Plaintiff alleges a conspiracy in violation of 42 U.S.C. § 1985(3). Because the minimal factual allegations are conclusory and lacking in specific facts, this Count must be dismissed.

1. Standard

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must establish: "'(1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.'" *Livingston v. Borough of Edgewood*, 430 F. App'x 172, 178 (3d Cir. 2011) (quoting *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997)).

"[C]laims under Section 1985 must be pleaded with specificity in order to withstand a motion to dismiss. Broad, conclusory allegations, unsupported by specific facts implicating specific defendants are insufficient to state a claim upon which relief can be granted." *Martin v.*

20

*Delaware Law Sch. of Widener Univ.*, 625 F. Supp. 1288, 1297 (D. Del. 1985) *aff'd*, 884 F.2d 1384 (3d Cir. 1989) (internal citation omitted). Furthermore, a conspiracy is not actionable absent an independent wrong. *See Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 497 (D.N.J. 1998).

The Supreme Court has held that in order to state a valid section 1985 claim, "there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). However, the Supreme Court has not extended section 1985(3)'s protection to any class other than race. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993) (holding that the term "class" for purposes of § 1985(3) "unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors.") Yet, although the Third Circuit "has not directly addressed whether section 1985(3) applies to a class defined by the religious beliefs of its members," it has "suggested that it may consider religious groups to be a class protected by section 1985(3)." *Startzell v. City of Philadelphia*, No. 05-05287, 2006 WL 1479809, at *4 (E.D. Pa. May 26, 2006) (citing *Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir. 1989) (remanding case in part because parolee's civil rights complaint alleging discrimination due to "racial and religious animus" did not "clearly lack any arguable factual or legal basis"); *King v. Township of E. Lampeter*, 17 F.Supp.2d 394, 424 (E.D. Pa. 1998) (noting in context of alleged "anti-Amish animus" that "although no court within this Circuit has applied [section] 1985(3) in the context of . . . religious discrimination, we believe that such protection would likely be appropriate in some cases")).

Furthermore, Plaintiffs must allege facts demonstrating that Defendants' discrimination against a religious group is "invidious." Three guidelines appear to guide the Third Circuit's determination of what makes a discriminatory animus against a class "invidious": (1) the

immutability of the class's characteristics; (2) a history of pervasive discrimination against the

class; and (3) whether there is an "emerging rejection" of such discrimination against the class.

*See Lake v. Arnold*, 112 F.3d 682, 688 (3d Cir.1997); *see also Startzell v. City of Philadelphia*, No.

05-05287, 2006 WL 1479809, at *6 (E.D. Pa. May 26, 2006) ("[D]espite a lack of clear authority

from the Third Circuit, I find that Plaintiffs have adequately alleged that the discriminatory animus

at issue was invidious.").

    2.  <u>Discussion</u>

    Defendants move to dismiss Count Six of Plaintiffs' Complaint on the grounds that

Plaintiff's § 1985(3) claim fails to state a cognizable claim because all of the allegations contained

in the Complaint are conclusory and lack the requisite factual detail.  (Mov. Br. at 9-11; Reply Br.

at 6-8.)  Defendants also argue that Plaintiff's conspiracy claim must fail because Defendants'

alleged actions affected Plaintiff individually, and was not aimed at any broader "class" of

employees.  (*Id.*)

    Plaintiff contends in opposition that "the following claims asserted within the Complaint

demonstrate the specificity of the pleading… as to Defendant Jones:"

    a)  'Defendant Jones additionally secured an understanding with Mr. Handelman's
       new supervisor that Mr. Handelman could be called back to work on OIG
       assignments and matters.' (Compl. ¶ 35).

    b)  'Despite overseeing internal investigations of department employees, a function
       separate from the 'prosecution' arm of the department, Defendant Jones
       improperly influenced and/or required Ms. Shapiro to sign off on Mr.
       Handelman's PND.' (Compl. ¶ 46).

    c)  'Defendant Jones acted in concert with HR director Michele Shapiro when they
       intentionally acted to deny Mr. Handelman his inviolable right which without
       the necessary procedure safeguards in place, imposed discipline without fairness
       denying Mr. Handelman's right to be heard, evidence to be presented, and
       thereafter discipline to be imposed.' (Compl. ¶ 47).

(Opp. Br. at 16-18.)  Plaintiff also argues that, because he is part of an identifiable "class" the

conspiracy claim is sufficiently pled, even though Plaintiff was discriminated against individually. (*Id.*)

The Court finds that Plaintiff's complaint fails to state a cause of action under section 1985(3). Plaintiff merely provides "[b]road, conclusory allegations, unsupported by specific facts" that are insufficient to state a claim. *Martin*, 625 F. Supp. at 1297. For example, Plaintiff provides no facts regarding the alleged "understanding" with Mr. Handelman's new supervisor, and does not explain how Defendant Jones "acted in concert" with Ms. Shapiro, aside from stating in conclusory fashion that Defendant Jones "improperly influenced and/or required" Ms. Jones to take certain action. Accordingly, Count Six shall be dismissed, but with leave to amend.

## CONCLUSION

For the reasons above, the Court grants the Partial Motion to Dismiss. An appropriate Order accompanies this Opinion.

DATED: July 12, 2016

_____
JOSE L. LINARES
UNITED STATES DISTRICT JUDGE